**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:26-mj-30-ALS |
| | : | |
| ERIC ORLANDO RICHARDS, | : | |
| | : | |
| Defendant. | : | |

## ORDER

Pending before the Court is Defendant Eric Orlando Richards's Motion to Dismiss the information charging him with violating 18 U.S.C. § 930(a) for being unconstitutional as applied to him. (Doc. 11.) The Government has filed a motion in opposition. (Doc. 14.) The Defendant did not file a reply in further support of the Motion. Neither party requested oral argument, and this matter is now ripe for consideration. Having reviewed the parties' submissions, for the reasons set forth below and for good cause having been shown, the Motion to Dismiss is **DENIED**.

### I. Factual Basis

The material facts are not in dispute for purposes of this motion. On February 26, 2025, Defendant drove through Gate 25 of Marine Corps Logistics Base Albany ("MCLB") to appear for his job on the base. (Doc. 11 at 1). Once inside the gate, Marine Corps Police directed Defendant to a search area and conducted a Command Authorized Vehicle Inspection ("CAVI"). (Doc. 11 at 1); (Doc. 14 at 1-2). During the search, Officers located a Taurus 9mm gun that was unloaded and had no ammunition. (Doc. 11 at 1); (Doc. 14 at 2). Defendant was subsequently arrested and charged with possession of a firearm within a federal facility pursuant to 18 U.S.C. § 930(a) which punishes whoever "knowingly possesses or causes to be present a firearm or other dangerous weapon in a Federal facility

. . . , or attempts to do so." 18 U.S.C. § 930(a). Defendant made a statement to officers while in custody and admitted that he was aware he possessed a gun, but that he kept the clip separated from the gun itself. (Doc. 14 at 2).

## II. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) allows a party to file a pretrial motion to dismiss the criminal charges pending against him and seek dismissal on the grounds that the statute is unconstitutional. Fed. R. Crim. P. 12(b)(1). Rule 12(b) states that a party may submit a pretrial motion based on "any defense, objection, or request that the court can determine without a trial on the merits." *Id.*

## III. The Parties Contentions

Defendants contends that the statute, as applied to him, violates the Second Amendment and is void for vagueness under the Fifth Amendment, and that the rule of lenity places him within the exemptions in § 930(d). *See generally* Doc. 11. Specifically, Defendant contends that having a gun in his vehicle while entering a federal facility violates his individual Second Amendment right to carry a firearm in his vehicle for self-defense. *Id.* at 2. Defendant further argues that "the Government cannot prove a "historical analog regulating the possession of firearms within personal vehicles." *Id.* Defendant urges the Court to adopt the reasoning set forth in *United States v. Ayala*, 711 F. Supp. 3d 1333 (M.D. Fla. 2024) and to dismiss the Government's Information. (Doc. 11 at 3). The Government counters that the regulation at issue does not apply to an individual's right to possess a firearm on a military installation. (Doc. 14 at 3-4). Instead, the regulation at issue here serves the purpose of maintaining safety and order on Government property, "an active United States military installation." *Id.* at 4.

## IV. The Second Amendment

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II. However, the individual right secured by the Second Amendment is "not unlimited, just as the First Amendment's right of free speech [is] not." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *see, e.g.*, *Greer v. Spock*, 424 U.S. 828 (1976) (upheld regulations barring First Amendment political speeches and requiring approval to distribute literature on a military installation).

The United States Supreme Court has applied a two-step framework to evaluate challenges under the Second Amendment. First, a challenging party must establish that "the Second Amendment's plain text covers an individual's conduct." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). The first inquiry is confined to the text: whether the challenger is among "the people," whether the weapon is among the "Arms," and whether the law restricts keeping or bearing them. *Wolford v. Lopez*, 609 U.S. ____, No. 24-1046 at 7 (June 25, 2026). Here, the Government does not dispute that Defendant is among the people the Second Amendment protects or that a revolver is an arm, and § 930(a) restricts the carrying of it. *See generally* Doc. 14. Thus, Defendant has carried his burden of showing that the Second Amendment's plain text covers the challenged conduct. The Court thus turns its attention to step two of the *Bruen* analysis.

When the Second Amendment's plain text covers an individual's conduct, "the Constitution presumptively protects that conduct," and the burden then shifts to the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. At step two, a court "must ascertain whether the [challenged] law is relevantly similar to laws that our tradition is

understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

The Government may carry its burden by showing that the regulation is "relevantly similar" to laws our tradition is understood to permit, and "[w]hy and how the regulation burdens the right are central to this inquiry." *Id.* Crucial to this inquiry is "[w]hy and how the regulation burdens the right." *Id.* at 680. No "historical twin" is required. *Id.* But "[t]he more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld." *United States v. Hemani*, 608 U.S. ___, No. 24-1234, at 5 (June 18, 2026). The question is whether the historical rule and the modern one are close enough to permit a court to say: "Because this historical law was understood to be compatible with the right codified by the Second Amendment, we can infer that the restriction imposed by the modern law is likewise consistent with that right." *Wolford*, 609 U.S. ___, at 8.

## V. Discussion & Analysis

The Court must decide whether a closed military installation is analogous to the places that tradition covers. Neither party has identified case law that is relevant to the precise question presented here. The undersigned has conducted a thorough search of case law involving gun control regulations on federal facilities but has not found a single case involving a military installation and the "right to bear arms" secured by the Second Amendment. Despite the lack of authority directly on point with the issue here, the Court recognizes that the absence of an exact historical comparator is not necessarily determinative of an analysis under the Second Amendment.

For example, *Bruen* identified "legislative assemblies, polling places, and courthouses" as places where weapons were historically prohibited, observed that it was

"aware of no disputes regarding the lawfulness of such prohibitions," and explained that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Bruen*, 597 U.S. at 30. *Heller* also gave helpful examples of spaces where sensitive place restrictions are likely constitutional. Neither the list in *Bruen* nor *Heller* is exhaustive.[1]

The Court finds that the challenged regulation here, the prohibition against weapons inside MCLB, is within the well-established tradition and history of regulating firearms in sensitive places. The prohibitions that *Bruen* treated as settled share two features that the Court has taken into consideration here. Each protected a place where the Government carries out a function that belongs to it alone, and each operated only within the bounds of that place, leaving the right intact everywhere else. Section 930(a), as applied here, has the same purpose and operates in the same way. It is undisputed that MCLB is "an active military installation with controlled access." (Doc. 14 at 4). Thus, the regulation at issue in this case is far more limited in application in that it applies only to the confines of MCLB, which is a properly noticed military installation. Providing for the common defense is as much a function of the sovereign as legislating, conducting elections, and adjudicating. Further, the ban does not prohibit the Defendant from traveling with a weapon in his vehicle. The regulation only prohibits the Defendant's ability to travel through the gated confines of MCLB's property with a weapon.

The record of how the United States has governed its military posts further

---

[1] Although this is not a Fourth Amendment matter, the Court notes the logical corollary that individuals have historically had a decreased expectation of privacy in "sensitive areas" such as courthouses, airports, military installations, prisons, gun free school zones, public parks, playgrounds, stadiums, etc.

confirms the analogy. From the beginning, persons who were not soldiers but came within the Army's lines were placed under military authority. The Articles of War of 1775 provided that "all persons whatsoever, serving with the continental army in the field, though not [enlisted] soldiers, are to be subject to the articles, rules, and regulations of the continental army." Articles of War of 1775, art. XXXII. Congress carried the rule forward in 1776 and again in 1806. Articles of War of 1776, § XIII, art. 23; Act of Apr. 10, 1806, ch. 20, art. 60, 2 Stat. 359, 366 ("All suttlers and retainers to the camp, and all persons whatsoever, serving with the armies of the United States in the field, though not enlisted soldiers, are to be subject to orders, according to the rules and discipline of war."). Entry was by leave. The 1775 Articles punished any person who should "make known the watch-word to any person who is not entitled to receive it." *Id.* art. XXVI. The Army's regulations later directed that the countersign "is given to such persons as are entitled to pass during the night," and that a sentinel "will suffer no person to come nearer than within reach of his bayonet, until the person has given the countersign." *Revised United States Army Regulations of 1861* ¶¶ 401, 424, at 61, 64 (1863). A person approaching a guard post at night was halted "until examined by a non-commissioned officer of the guard." *Id.* ¶ 427, at 65. Guards were posted over magazines. *Id.* ¶ 562, at 83. The commander of an intrenched post "permits no flags of truce, deserters, or strangers to enter." *Id.* ¶ 648, at 93.

The places where the United States made and stored arms were governed the same way. The Ordnance Department "has charge of the arsenals and armories," and the officer in charge of each was to "make and publish the rules for its internal government." *Id.* ¶¶ 1406, 1429, at 396, 399. The national armory at Harpers Ferry was placed under the Ordnance Department in 1815. Its superintendent in 1829 "posted meticulous rules

forbidding loitering, gambling, and drinking on the armory's premises," and by the 1850s the musket factory was "enclosed by a six to nine ft.-high wall" with gates and a guard room for night watchmen. Andrew S. Lee, Nat'l Park Serv., *The U.S. Armory at Harpers Ferry: Historic Resource Study* 27, 43, 49, 52 (2006).

The Court does not overstate these materials. None of them, in terms, forbade a civilian to bring a private firearm onto a post, and several governed armies in the field. They are not offered as analogues that would sustain § 930(a) by themselves. However, they show what kind of place a military post has been throughout the Nation's history: a place a civilian entered only by the commander's permission and subject to his orders, kept under guard, where the Government held its arms and powder. That is the Government's point when it invokes the military's "obvious and longstanding authority to control who enters its installations and what they may bring with them." Doc. 14 at 4; *see also United States v. Apel*, 571 U.S. 361–62, 368–69 (2014); *Greer*, 424 U.S. at 838. A place with that character is at least as sensitive as a courthouse or a legislative chamber.[2]

**III. Vagueness**

A criminal statute is void for vagueness if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). In an as-applied challenge the question is whether the statute gave fair notice that Defendant's own conduct was

---

2 The Supreme Court's most recent decisions do not alter this conclusion. The analogues in *Hemani* failed because they "targeted different kinds of people, did so for different purposes, and operated in different ways." *Hemani*, 608 U.S. ___, at 7. Section 930(a) singles out no class of persons, and its purpose and operation match those of the prohibitions *Bruen* accepted. The law in *Wolford* reached "retail establishments that residents of cities and suburbs frequent as part of their daily routines." *Wolford*, 609 U.S. ___, at 21. A gated military base is not such a place. Nor does this case approach the limit *Bruen* drew when it refused to let New York "declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Bruen*, 597 U.S. at 31. The installation is bounded, closed to the public, and devoted to a governmental function.

prohibited. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–20 (2010).

The Court finds that § 930 gave Defendant fair notice that attempting to bring a firearm onto a military installation was prohibited. Section 930(a) prohibits knowingly possessing a firearm in a federal facility, or attempting to do so, and the Eleventh Circuit has described it as defining a "perfectly cogent offense." *United States v. McArthur*, 108 F.3d 1350, 1354 (11th Cir. 1997). Defendant's argument is directed at the exemptions in § 930(d)(2) and (d)(3). (Doc. 11 at 4.) That Congress did not define "Federal official," "authorized by law," or "other lawful purposes" does not make those terms vague; undefined terms take their ordinary meaning. Read in their ordinary sense, those terms gave Defendant fair notice that a state statute on firearms did not exempt him from § 930(a).[3]

**IV. Section 930(d) and the rule of lenity**

Defendant also argues that lenity places him within § 930(d)(2) or (d)(3). (Doc. 10 at 5.) Lenity applies only where, after the ordinary tools of interpretation are exhausted, a "grievous ambiguity" remains. *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998). None does. Whether Defendant's possession was "authorized by law" or was "lawful carrying . . . incident to hunting or other lawful purposes" turns on facts to be determined at trial, not on a Rule 12 motion.

**VI. Conclusion**

In sum, the Second Amendment does not secure any individual's fundamental right to bear arms when they are occupying a sensitive place, such as a federal facility,

3 Defendant does not argue that the place where he was stopped falls outside the definition of "Federal facility" in § 930(g)(1), and the Court expresses no view on that question.

where the regulations banning the possession of, carrying, or storing a firearm on the premises are duly noticed. The Supreme Court in *Heller* has said that "nothing in [its] opinion should be taken to cast doubt on longstanding…laws forbidding carrying of firearms in sensitive places such as…government buildings…". *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Because the Supreme Court's listing is not exhaustive, Defendant's Motion to Dismiss the Information (Doc. 11) is **DENIED**.

**SO ORDERED**, this 13th day of October, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE